UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
|  | ) |  |
| LISA L. LADAY-DAVIS, | ) | CASE NO. 23-52400-JWC |
|  | ) |  |
| Debtor. | ) |  |

------------------------------------------------------------------------------------------------

|  |  |  |
|---|---|---|
| S. GREGORY HAYS, as Chapter 7 trustee, | ) |  |
|  | ) |  |
| Movant, | ) |  |
|  | ) |  |
| v. | ) | CONTESTED MATTER |
|  | ) |  |
| DISCOVER BANK, CBC NATIONAL BANK MORTGAGE, a division of FIRST FEDERAL BANK, INTERNAL REVENUE SERVICE, COBB COUNTY TAX COMMISSIONER, HIGH-CALIBER CONSTRUCTION, LLC CONTRACTORS, LLC, and LISA L. LADAY-DAVIS, | ) | |
|  | ) |  |
| Respondents. | ) |  |

**TRUSTEE'S MOTION FOR AUTHORITY TO (A) SELL PROPERTY OF THE BANKRUPTCY ESTATE FREE AND CLEAR OF ALL LIENS, INTERESTS, AND ENCUMBRANCES AND (B) DISBURSE CERTAIN PROCEEDS AT CLOSING**

COMES NOW S. Gregory Hays, as Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate of Lisa L. Laday-Davis ("**Debtor**"), pursuant to 11 U.S.C. §§ 363(b), (f), and (m) and Fed. R. Bankr. P. 2002(a)(2), 6004(a), 6004(c) and 9014, through undersigned counsel, and files *Trustee's Motion for Authority to (A) Sell Property of the Bankruptcy Estate Free and Clear of All Liens, Interests and Encumbrances, and (B) Disburse Certain Proceeds at Closing* (the "**Sale Motion**"), respectfully showing:

**Venue and Jurisdiction**

1.      This Court has jurisdiction over this Sale Motion under 28 U.S.C. §§ 157 and 1334.  Venue of this case in this District is proper under 28 U.S.C. §§ 1408 and 1409.  This Sale Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

**Background**

*a. General Background*

2.      On March 13, 2023 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, initiating Case No. 23-52400-JWC (the "**Case**").

3.      Also on the Petition Date, Debtor filed under penalty of perjury her *Statement of Financial Affairs, Schedules "A"* through *"J",* and *Other Bankruptcy Documents* [Doc. No. 1] (the "**Schedules**").

4.      At the commencement of the Case, the bankruptcy estate was created under 11 U.S.C. § 541(a) (the "**Bankruptcy Estate**"), and the Bankruptcy Estate includes all Debtor's legal or equitable interests in property as of the commencement of the Case and any interest in property that the Bankruptcy Estate acquired after commencement of the Case.  11 U.S.C. §§ 541(a)(1) and (7).

5.      Trustee is the sole representative of the Bankruptcy Estate.  11 U.S.C. § 323(a).

6.      The duties of Trustee include his obligation to "collect and reduce to money the property of the estate . . . ." 11 U.S.C. § 704.

*b. The Property*

7.      On the Petition Date, Debtor was the sole owner of record of that certain real property with a common address of 2220 Derbyshire Drive, Marietta, Georgia 30064 (the

"**Property**").

8.      On her *Schedule C: The Property You Claim as Exempt*, Debtor scheduled a homestead exemption in the Property in the amount of $21,400.00 under O.C.G.A. § 44-13-100(a)(1) (the "**Property Exemption**").  *See* [Doc. No. 1, page 21 of 79].

### c. Alleged Liens, Interests, and Encumbrances

9.      On her *Schedule D: Creditors Who Have Claims Secured by Property* [Doc. No. 1, page 23 of 79], Debtor scheduled three claims on or against the Property: (a) a mortgage in the amount of $423,105.00 in favor of LoanCare LLC;[1] (b) a mortgage in the amount of $49,434.00 in favor of Discover Bank; and (c) a materialman's lien in the amount of $25,225.00 in favor of High-Caliber Construction, LLC ("**High Caliber**").

10.     Trustee has obtained a title report for the Property (the "**Title Report**"), which confirms the secured claims of CBC National Mortgage Company (as purportedly serviced by LoanCare, LLC) ("**CBC**"), Discover Bank ("**Discover**"), and High Caliber in the Property.

11.     The Title Report also indicates that the Internal Revenue Service (the "**IRS**") may have a tax lien against the Property based on a tax assessed against Antonio Thomas.  However, the previous owner of the Property who transferred the Property to Debtor was Anthony Thomas and not *Antonio* Thomas.  In addition, the address of the debtor on the notice of tax lien is a different address than that of the Property.  As a result, Trustee asserts that the IRS has no lien against the Property.

12.     The Title Report reflects no other liens, interests, or encumbrances on or against the Property except for an inchoate *ad valorem* real property tax owed to the Cobb County Tax

---

[1]      Upon information and belief, LoanCare, LLC is the servicer of this loan, and CBC National Mortgage Company, a division of First Federal Bank, appears to hold the subject security deed based on the real estate records of Cobb County, State of Georgia.

Commissioner ("**Cobb County**").

13.    On May 16, 2023, Trustee filed his *Application to Employ Real Estate Agent Under Listing Agreement* [Doc. No. 30], seeking authority to employ Chambers Select and Bill Celler (collectively, the "**Broker**") as the listing agent for the Bankruptcy Estate, at a starting list price of $640,000.00 (the "**List Price**") with a six percent (6%) commission of the sale price. On May 17, 2023, the Court entered an *Order* [Doc. No. 32], authorizing Trustee's employment of the Broker.

### Proposed Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances

14.    After much negotiation, Trustee entered into a *Purchase and Sale Agreement* for the sale of the Property to Cesar A. Guevara (the "**Purchaser**"), "as is, where is," for a sale price of $671,000.00 (the "**Purchase Price**"), subject to Bankruptcy Court approval (the "**Contract**"). A true and correct copy of the Contract, as amended, is attached hereto and incorporated herein by reference as Exhibit "A."

15.    The Purchaser was procured through the efforts of Trustee and his Broker, is a *bona fide* purchaser, and is not an insider of Debtor, Trustee, or the Broker.  The Purchaser has submitted an earnest money deposit in the amount of $12,800.00.

16.    Trustee's proposed Contract for a Purchase Price of $671,000.00 is: (a) the highest and best offer that Trustee has received; and (b) an appropriate selling price for the Property.

17.    Subject to Bankruptcy Court approval, the closing of the sale of the Property is currently scheduled for July 28, 2023 (the "**Closing**").

### Relief Requested

18.    Trustee requests an order from the Court granting this Sale Motion; approving the

Contract; and authorizing Trustee to sell, assign, and transfer the Bankruptcy Estate's right, title, and interest in and to the Property to Purchaser for a Purchase Price of $671,000.00 free and clear of all liens, claims, interests, and encumbrances but otherwise on an "as is, where is" with all faults basis.

19.     Trustee requests an order from the Court finding that Trustee and Purchaser have proceeded in good faith and that Trustee and Purchaser are entitled to the protections of 11 U.S.C. § 363(m).

## Legal Analysis

### a. Sale Free and Clear

20.     Section 363 of the Bankruptcy Code authorizes a trustee "after notice and a hearing . . . [to] use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).  Section 105 of the Bankruptcy Code grants this Court the authority to "issue any order, process, or judgment necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

21.     The standard to grant a sale of property outside of the ordinary course of business is the sound business judgment of the trustee.  *In re Chateaugay*, 973 F.2d 141 (2d Cir. 1992); *Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3d Cir. 1986); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).  In this regard, a trustee's showing need not be exhaustive; rather, a trustee is "simply required to justify the proposed disposition with sound business reason." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

22.     Applying these principles of law here, the Court should authorize the proposed sale because it will result in Trustee's making a meaningful distribution to unsecured creditors, and absent the proposed sale, such a significant distribution is unlikely.

23.     In turn, Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property under 11 U.S.C. § 363(b) free and clear of any interest in the subject property if, among other things, the price at which the property is to be sold is greater than the aggregate of the liens on such property, or if such interest is the subject of a bona fide dispute.  11 U.S.C. § 363(f). Specifically, that code section provides:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if-
>
> (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2)     such entity consents;
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)     such interest is in bona fide dispute; or
> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*Id.*

24.     As set forth above and below, Trustee can, under 11 U.S.C. § 363(f), sell the Property free and clear of all liens, claims, interests, and encumbrances with any lien (to the extent valid, perfected, enforceable, and unavoidable) attaching to the proceeds of the sale with the same priority and extent as it had in the Property.

25.     CBC, Discover, High Caliber, and Cobb County have the only valid liens on or against the Property, and, upon information and belief, the sum of those liens is less than $550,000.00.  The proposed Purchase Price is significantly greater than the amounts owed to these lienholders, satisfying Section 363(f)(3).

26.     In addition, the alleged lien of the IRS is no lien at all because it is owed by someone other than the "Anthony Davis" who transferred the Property to Debtor.  At the very least, it is the subject of a bona fide dispute, satisfying Section 363(f)(4).

27.     Notably, the proposed sale of the Property is not in the ordinary course of business, as allowed by 11 U.S.C. § 363(b). Any lien to the extent valid, perfected, enforceable and unavoidable will attach to the proceeds of the sale as provided by 11 U.S.C. § 363(f).

### b. Good Faith of Trustee and Purchaser

28.     Moreover, 11 U.S.C. § 363(m) provides that the reversal or modification on appeal of an authorization of a sale or lease of property does not affect the validity of the sale or lease under such authorization to an entity that purchased or leased the property in good faith. *See* 11 U.S.C. § 363(m).

29.     Although the Bankruptcy Code does not define good faith, courts have recognized that the kind of misconduct that would destroy a good faith status involves fraud, collusion between the purchaser and other offerors or the trustee, or an attempt to take grossly unfair advantage of other offerors.  *See In re Abbott Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

30.     Trustee and Purchaser have proceeded in good faith, and the Purchaser is a *bona fide,* good-faith purchaser and not an insider of Debtor, Trustee, or the Broker.  Consequently, Trustee and Purchaser are entitled to the protections of 11 U.S.C. § 363(m).

### Request for Authority to Disburse Certain Proceeds at Closing

31.     Trustee requests authority to have all sale proceeds paid to him at Closing and for authority to have paid at Closing: (a) the full loan payoffs or liens to CBC (or LoanCare), Discover, and High Caliber; (b) all outstanding *ad valorem* real property taxes owed to Cobb

County (none anticipated); (c) the Bankruptcy Estate's pro-ration of the 2023 *ad valorem* county real property taxes owed to Cobb County; (d) the real estate commission of six percent (6%) of the Purchase Price in the amount of $40,260.00; (e) any capital gains or other taxes related to the sale (none anticipated); (f) water and sewer liens (none anticipated); (g) all other costs of sale, or costs necessary to close a sale of the Property; and (h) Debtor's Property Exemption.

32.    All other distributions will be made only upon further order of the Court.

33.    To the extent funds are disbursed at Closing by a party other than Trustee, Trustee requests that such party be treated as Trustee's designated and authorized agent.

34.    Based on the above proposed distributions, Trustee estimates that the proposed sale will result in approximately $100,000.00 to $110,000.00 coming into the Bankruptcy Estate, all of which will be available to distribute in accordance with 11 U.S.C. § 726.  In other words, upon information and belief, the proposed sale of the Property to Purchasers will allow Trustee to make a meaningful distribution to holders of unsecured claims against the Bankruptcy Estate.

**Other Relief Requested**

35.    In addition, Trustee requests that the Court waive the stay of the order approving the proposed sale as authorized under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

36.    Finally, following notice to all creditors and parties in interest of the Sale Motion and the date of the Hearing, Trustee invites any and all parties wishing to submit a competing cash bid which exceeds the present Contract by **at least $10,000.00,** supported by earnest money of **at least two percent (2%) of the bid price**, with no contingencies, and the ability to close within ten (10) days from Bankruptcy Court approval, so long as earnest money is paid to the Trustee in good funds and any such bid is filed with the Court in the form of an objection to the

Sale Motion by the objection deadline set forth in the related notice of hearing and objection deadline filed contemporaneously herewith.

WHEREFORE, Trustee respectfully requests that the Court enter an Order:

(a)     Granting the Sale Motion;

(b)     Authorizing and approving the Contract and the sale of the Property free and clear of all liens, interests, and encumbrances;

(c)     Authorizing the distribution of certain proceeds at Closing, as set forth herein;

(d)     Finding that Purchaser is a good faith purchaser and that Trustee and Purchaser are entitled to the protections of 11 U.S.C. § 363(m);

(e)     Authorizing the proposed sale to be consummated immediately as allowed by Federal Rules of Bankruptcy Procedure Rule 6004(h); and

(f)     Granting such other and further relief as the Court deems just or appropriate.

Respectfully submitted this 22nd day of June, 2023.

ROUNTREE LEITMAN KLEIN & GEER LLC
*Attorneys for Trustee*

By:*/s/ Michael J. Bargar*
2987 Clairmont Road, Suite 350          Michael J. Bargar
Atlanta, GA 30329                            Georgia Bar No. 645709
404-410-1220                                 mbargar@rlkglaw.com

**EXHIBIT "A" FOLLOWS**

## PURCHASE AND SALE AGREEMENT

Offer Date: 5-25-2023


*Georgia*REALTORS®

**2023 Printing**

### A. KEY TERMS AND CONDITIONS

**1. Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.

   **a. Property Identification:** Address: 2220 Derbyshire Drive SW

   City Marietta _____, County Cobb _____, Georgia, Zip Code 30064

   MLS Number: 7220563 _____ Tax Parcel I.D. Number: 19-0472-0-059-0

   **b. Legal Description:** The legal description of the Property is *[select one of the following below]*:

     ☒ (1) attached as an exhibit hereto;

     ☐ (2) Condominium (attach F204 Condominium Resale Purchase and Sale Exhibit)

     ☐ (3) the same as described in Deed Book _____, Page _____, et. seq., of the land records of the above county; **OR**

     ☐ (4) Land Lot(s) _____ of the _____ District, _____ Section/ GMD,
     Lot _____, Block _____, Unit _____, Phase/Section _____
     of _____ Subdivision/Development, according
     to the plat recorded in Plat Book _____, Page _____, et. seq., of the land records of the above county.

**2. Purchase Price of Property to be Paid by Buyer.**
$ 671,000.00 *SGH*

**3. Closing Costs.**
   **Seller's Contribution at Closing:** $ 0

**4. Closing Date and Possession.**
Closing Date shall be 7-28-2023 _____ with possession of the Property transferred to Buyer
☒ upon Closing **OR** ___ days after Closing at ___ o'clock ☐ AM **OR** ☐ PM (attach F219 Temporary Occupancy Agreement).

**5. Closing Law Firm.**
Campbell & Brannon - Mike Campbell
   **Phone Number:**
   (404) 279-4015

**6. Holder of Earnest Money ("Holder").** (If Holder is Closing Attorney, F510 must be attached as an exhibit hereto, and F511 must be signed by Closing Attorney.) Campbell & Brannon - Mike Campbell

**7. Earnest Money.** Earnest Money shall be paid by ☒ check ☐ ACH ☐ cash or ☐ wire transfer of immediately available funds as follows:

   ☐ **a.** $_____ as of the Offer Date.

   ☒ **b.** $12,800 within ____ days from the Binding Agreement Date.

   ☐ **c.** _____.

**8. Inspection and Due Diligence.**

   **a. Due Diligence Period:** Property is being sold subject to a Due Diligence Period of 0 ____ days from the Binding Agreement Date.

   **b. Option Payment for Due Diligence Period:** In consideration of Seller granting Buyer the option to terminate this Agreement, Buyer:

     (1) has paid Seller $10.00 in nonrefundable option money, the receipt and sufficiency of which is hereby acknowledged; plus

     (2) shall pay directly to Seller additional option money of $_____ by ☐ check ☐ ACH or ☐ wire transfer of
     immediately available funds either ☐ as of the Offer Date; **OR** ☐ within _____ days from the Binding Agreement Date. Any
     additional option money paid by Buyer to Seller ☐ shall (subject to lender approval) or ☐ shall not be applied toward the
     purchase price at closing and shall not be refundable to Buyer unless the closing fails to occur due to the default of the Seller.

**9. Lead-Based Paint.** To the best of Seller's knowledge, the residential dwelling(s) on the Property (including any portion thereof or painted fixture therein) ☐ was (attach F316 Lead-Based Paint Exhibit) **OR** ☒ was not built prior to 1978.

**10. Brokerage Relationships in this Transaction.**

   **a. Buyer's Broker is** Keller Williams Realty Citys and is:

     (1) ☒ representing Buyer as a client.

     (2) ☐ working with Buyer as a customer.

     (3) ☐ acting as a dual agent representing Buyer and Seller.

     (4) ☐ acting as a designated agent where:

     _____ has been assigned to exclusively represent Buyer.

   **b. Seller's Broker is** Chambers Select Realty and is:

     (1) ☒ representing Seller as a client.

     (2) ☐ working with Seller as a customer.

     (3) ☐ acting as a dual agent representing Buyer and Seller.

     (4) ☐ acting as a designated agent where:

     _____ has been assigned to exclusively represent Seller.

   **c. Material Relationship Disclosure:** The material relationships required to be disclosed by either Broker are as follows:
   N/A

**11. Time Limit of Offer.** The Offer set forth herein expires at _____ o'clock ____ .m. on the date 5-31-2023 _____.

Buyer(s) Initials _____      Seller(s) Initials _____

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Fatima Lozano _____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THIS FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2023 by Georgia Association of REALTORS®, Inc.      F201, Purchase and Sale Agreement, Page 1 of 9, 01/01/23

**B. FURTHER EXPLANATIONS TO CORRESPONDING PARAGRAPHS IN SECTION A.**    Trustee

1. **Purchase and Sale.**
   a. **Warranty:** Seller warrants that at the time of closing Seller will convey good and marketable title to said Property by ~~limited warranty~~ deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements (other than any driveway or walkway) do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement.
   b. **Examination:** Buyer may examine title and/or obtain a survey of the Property and furnish Seller with a written statement of title objections at or prior to the closing. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.
   c. **Title Insurance:** Buyer hereby directs any mortgage lender involved in this transaction to quote the cost of title insurance based upon the presumption that Buyer will be obtaining an enhanced title insurance policy since such a policy affords Buyer greater coverage.

2. **Purchase Price to be Paid by Buyer.** The Purchase Price shall be paid in U.S. Dollars at closing by wire transfer of immediately available funds, or such other form of payment acceptable to the closing attorney.

3. **Closing Costs.**
   a. **Seller's Contribution at Closing:** At closing, Seller shall make the referenced Seller's ~~Monetary~~ Contribution which Buyer may use to pay any cost or expense of Buyer related to this transaction, including without limitation, any commission obligations of Buyer. Buyer acknowledges that Buyer's mortgage lender(s) may not allow the Seller's ~~Monetary~~ Contribution, or the full amount thereof, to be used for some costs or expenses. In such event, any unused portion of the Seller's ~~Monetary~~ Contribution shall remain the property of the Seller. The Seller shall pay the fees and costs of the closing attorney: (1) to prepare and record title curative documents; (2) for Seller not attending the closing in person; and (3) payoff and proceeds handling and delivery.
   b. **Items Paid by Buyer:** At closing, Buyer shall pay: (1) Georgia property transfer tax; (2) the cost to search title and tax records and prepare the limited warranty deed; (3) all other costs, fees and charges to close this transaction, except as otherwise provided herein; and (4) all other title fees and post-closing fees.
   c. **Prorations:** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of closing shall be prorated as of the date of closing.  Notwithstanding any provision to the contrary, in the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, Buyer and Seller shall, upon the issuance of the actual tax bill or the appeal being resolved, promptly make such financial adjustments between themselves as are necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party professional costs to handle the appeal may be deducted from the savings for that tax year before re-prorating. Any pending tax appeal for the year in which the Property is sold shall be deemed assigned to Buyer at closing. The liability to the county and if applicable, city, in which the Property is located for ad valorem real property taxes for the year in which the Property is sold shall be assumed by Buyer upon the Closing of the Property. Buyer agrees to indemnify Seller against any and all claims of the county and if applicable, city, for unpaid ad valorem real property taxes for the year in which the Property is sold.

4. **Closing Date and Possession.**
   a. **Right to Extend the Closing Date:** Buyer or Seller may unilaterally extend the closing date for eight (8) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (excluding title objections that: (a) can be satisfied through the payment of money or by bonding off the same; and (b) do not prevent Seller from conveying good and marketable title, as that term is defined herein, to the Property); (2) Buyer's mortgage lender (including in transactions where the financing contingency has expired) or the closing attorney is delayed and cannot fulfill their respective obligations by the date of closing, provided that the delay is not caused by Buyer; or (3) Buyer has not received required estimates or disclosures and Buyer is prohibited from closing under federal regulations. The party unilaterally extending the closing date shall state the basis for the delay in the notice of extension.  If the right to unilaterally extend the closing date is exercised once by either the Buyer or Seller, the right shall thereafter terminate.
   b. **Keys and Openers:** At Closing, Seller shall provide Buyer with all keys, door openers, codes and other similar equipment pertaining to the Property.

~~5. Closing Law Firm: Buyer shall have the right to select the closing attorney to close this transaction, and hereby selects the closing attorney referenced herein. In all cases where an individual closing attorney is named in this Agreement but the closing attorney is employed by or an owner, shareholder or member in a law firm, the law firm shall be deemed to be the closing attorney. If Buyer is using a lender of record, the attorney that closing may also close this transaction. Buyer shall elect a different closing attorney acceptable to the mortgage lender. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer is obtaining a financing transaction, wherein the Buyer, to the extent the Buyer is using financing, the closing attorney shall prepare the Buyer's preparing the Closing document, attempting to clear title of the Property to the satisfaction of the title insurance company, conducting the Closing, disbursing funds according to the settlement statement signed by the parties and closing attorney, timely recording deeds and issuing owner's title insurance policy. Other than these services specifically listed above, nothing herein shall obligate the closing attorney to perform other legal services including but not limited to certifying or warranting title of the Property for the Buyer, except pursuant to a separate engagement agreement signed by the closing attorney and the Buyer.~~

**6.** **Holder of Earnest Money.** The earnest money, when paid to Holder, is a mode of payment acceptable to the Holder. Holder has the right to charge Buyer for any cost associated with receiving of earnest money. Such charge shall be collected separately from the payment of earnest money. The earnest money will be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check or pays with an ACH for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check or ACH has cleared the account on which the check was written or from which the ACH was sent. In the event any earnest money check is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days from the date of receiving the notice to cure the default and if Buyer does not do so, Seller may within seven (7) days thereafter terminate this Agreement upon notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived.

**7.** **Earnest Money.**
  **a.** **Entitlement to Earnest Money:** Subject to the paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any unexpired contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.
  **b.** **Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the closing of Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties at least ten (10) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the ten (10) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. Holder shall disburse the earnest money to Seller by check in the event Holder: (1) makes a reasonable interpretation of the Agreement that the Agreement has been terminated due to Buyer's default; and (2) sends the required ten (10) day notice of the proposed disbursement to Buyer and Seller. The above-referenced check shall constitute liquidated damages in full settlement of all claims of Seller against Buyer and the Brokers in this transaction. Holder may require Seller to sign a W-9 before issuing a check to Seller for liquidated damages of $600 or more. Such liquidated damages are a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain and are not a penalty.
  **c.** **Interpleader:** If an earnest money dispute cannot be resolved after a reasonable time, Holder may interplead the earnest money into a court of competent jurisdiction if Holder is unsure who is entitled to the earnest money. Holder shall be reimbursed for and may deduct its costs, expenses and reasonable attorney's fees from any funds interpleaded. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees, court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.
  **d.** **Hold Harmless:** All parties hereby covenant and agree to: (1) indemnify and hold Holder harmless from and against all claims, injuries, suits and damages (collectively, "Claims") arising out of the performance by Holder of its duties, including Claims caused, in whole or in part, by the negligence of the Holder; (2) not to sue Holder for any decision of Holder to disburse earnest money in accordance with this Agreement.

**8.** **Inspection and Due Diligence.**
  **a.** **Buyer's Right to Inspect Property:** Unless otherwise specified herein, the Property is being sold in "as-is" condition with any and all faults. Therefore, Buyer and/or Buyer's representative(s) have the right to carefully inspect the Property to make sure it meets the needs of the Buyer. **If Buyer is concerned that the Property may have been used as a laboratory for the production of methamphetamine, or as a dumpsite for the same, Buyer should review the National Clandestine Laboratory Register – Georgia at www.dea.gov.**
  **b.** **Buyer's Right to Inspect Neighborhood:** In every neighborhood there are conditions which different buyers may find objectionable. Buyer is solely responsible for becoming familiar with neighborhood conditions of concern to Buyer that could affect the Property such as landfills, quarries, power lines, airports, cemeteries, prisons, stadiums, odor and noise producing activities, crime and school, land use, government and transportation maps and plans. **If Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.**
  **c.** **Buyer's Inspection Rights Continue through Closing:** Upon prior notice to Seller, Buyer and/or Buyer's representatives shall have the continuing right through Closing to enter the Property at Buyer's expense and at reasonable times to, among other things, and without limitation, conduct inspections, examinations, evaluations, appraisals, surveys and tests, meet contractors and vendors, measure for renovations, determine the condition of the Property and confirm that any agreed upon repairs have been made. Seller shall cause all utilities, systems and equipment to be on so that Buyer may complete all inspections.
  **d.** **Buyer's Inspection Indemnification Obligations: Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries and damages related to the exercise of the above inspection rights by Buyer and Buyer's representatives, and Buyer shall promptly pay Seller the actual cost to restore any portion of the Property damaged or disturbed from testing or other evaluations to a condition equal to or better than the condition it was prior to such testing or evaluations.**

**e. Lead-Based Paint Hazard Evaluation:** If any portion of the Property was built prior to 1978, the Lead-Based Paint Exhibit (F316) is hereby attached as an Exhibit to the Agreement. Buyer shall have the right to conduct a lead hazard evaluation within ten (10) days from the Binding Agreement Date (or other mutually agreed upon time period) and to terminate this Agreement without penalty upon notice to Seller if lead-based paint and/or lead hazards are found (unless these rights are waived by Buyer in the Lead-Based Paint Exhibit (F316)). If the Lead-Based Paint Exhibit (F316) gives Buyer the right to terminate this Agreement if lead-based paint or lead hazards are found and such notice of termination is not given within ten (10) days from Binding Agreement Date (or other mutually agreed upon time period), the right to terminate for lead-based paint and/or lead hazards shall be waived.

**f. Due Diligence Period:** If the Property is being sold subject to a Due Diligence Period, then: a) this Agreement shall be an option contract during which time Buyer shall have the option, for any reason or for no reason, to terminate this Agreement upon notice to the Seller given prior to the expiration of the Due Diligence Period, in which case Buyer shall be entitled to a return of Buyer's earnest money without penalty; b) Buyer may, during the Due Diligence Period, seek to amend this Agreement to address any concerns Buyer has with the Property or this Agreement; and c) if Buyer has not terminated this Agreement as set forth above, Buyer shall accept the Property in "as-is" condition, subject to any amendment to this Agreement to address concerns agreed to by the parties.



~~**g. Seller's Duty to Disclose:** Seller shall disclose to Buyer any and all known latent or hidden defects in the Property that could not be discovered by the Buyer during a reasonably careful inspection of the Property.~~

~~**h. Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense), if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.~~

**i. Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to Closing unless otherwise agreed to in writing by the Buyer and Seller.

**9. Lead-Based Paint.** If any portion of a residential dwelling on the Property was built prior to 1978, the Lead-Based Paint Exhibit (F316) is hereby attached as an exhibit to this Agreement. The term "residential dwelling" includes any painted fixture or material used therein that was built or manufactured prior to 1978.

**10. Brokerage Relationships in this Transaction.**

**a. Agency Disclosure:** No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;

**(1) No Agency Relationship:** Buyer and Seller acknowledge that: a) if they are not represented by Brokers in a client relationship, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party; and b) if the same brokerage firm is representing one party as a client and working with the other party as a customer, the Broker and all of Broker's affiliated licensees are representing the client.

**(2) Consent to Dual Agency:** If Broker is acting as dual agent in this transaction, Buyer and Seller consent to the same and acknowledge having been advised of the following:

  **i. Dual Agency Disclosure:** *[Applicable only if Broker is acting as a dual agent in this transaction.]*

    (a) As a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;

    (b) Broker will disclose all adverse material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;

    (c) Buyer and Seller do not have to consent to dual agency and the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.

    (d) Notwithstanding any provision to the contrary contained herein Buyer and Seller each hereby direct Broker while acting as a dual agent to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.

  **ii. Designated Agency Disclosure:** If Broker in this transaction is acting as a designated agent, Buyer and Seller consent to the same and acknowledge that each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.

**b. Brokerage:** Unless otherwise specified herein, the real estate commissions owing to the Seller's Broker and Buyer's Broker, if any, are being paid pursuant to separate brokerage engagement agreements. Buyer and Seller agree that any commissions to be paid to Broker(s) shall be shown on the settlement statement and collected by closing attorney as a pre-condition to Buyer and Seller closing on the Property so long as the same is permitted by Buyer's mortgage lender, if any. The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective commissions pursuant to written instructions from the Broker(s) at closing, their respective commissions pursuant to written instructions from the Broker(s). If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the party owing the commission the same from paying the remainder after the closing (unless the Broker(s) have expressly agreed in writing to accept the amount paid in full satisfaction of the Broker(s) claim to a commission). The Brokers herein are signing this Agreement to reflect their role in this transaction and consent to act as Holder if either of them is named as such. This Agreement and any amendment thereto shall be enforceable even without the signature of any Broker referenced herein. The broker(s) are express third-party beneficiaries to this Agreement.

**c. Disclaimer:** Buyer and Seller are not relied upon any advice or representations of Brokers other than what is included in this Agreement. Brokers shall have no duty to inspect the Property or to advise Buyer or Seller on any matter relating to the Property which could have been revealed through a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, tests for radon, asbestos, mold, methamphetamine, and lead-based paint; moisture test of stucco or synthetic stucco, inspection of the Property by a professional, construction expert, structural engineer or environmental engineer; review of this Agreement and transaction by an attorney, financial planner, mortgage consultant or tax consultant; and consulting appropriate governmental officials to determine, among other things and without limitation, the zoning of Property, the propensity of the Property to flood, flood zone certifications, whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Buyer and Seller acknowledge that Broker does not perform or have expertise in any of the above tests, inspections, and reviews or in any of the matters handled by the professionals referenced above. Buyer and Seller should seek independent expert advice regarding any matter of concern to them relative to the Property and this Agreement. Buyer and Seller acknowledge that Broker shall not be responsible to monitor, supervise, or inspect any construction or repairs to Property and such tasks clearly fall outside the scope of real estate brokerage services. If Broker has written any special stipulations herein, the party for whom such special stipulations were written: a) confirms that each such stipulation reflects the party's complete understanding as to the substance and form of the special stipulations; b) hereby adopts each special stipulation as the original work of the party; and c) hereby agrees to indemnify and hold Broker who prepared the stipulation harmless from any and all claims, causes of action, suits, and damages arising out of or relating to such special stipulation. Buyer acknowledges that when and if Broker answers a question of Buyer or otherwise describes some aspect of the Property or the transaction, Broker is doing so based upon information provided by Seller rather than the independent knowledge of Broker (unless Broker makes an independent written disclosure to the contrary).

**11. Time Limit of Offer.** The Time Limit of the Offer shall be the date and time referenced herein when the Offer expires unless prior to that date and time both of the following have occurred: (a) the Offer has been accepted by the party to whom the Offer was made; and (b) notice of acceptance of the Offer has been delivered to the party who made the Offer.

## C.  OTHER TERMS AND CONDITIONS

**1. Notices.**

   **a. Generally:** All notices given hereunder shall be in writing, legible and signed by the party giving the notice.  In the event of a dispute regarding notice, the burden shall be on the party giving notice to prove delivery.  The requirements of this notice paragraph shall apply even prior to this Agreement becoming binding.  Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by e-mail or facsimile. The person delivering or sending the written notice signed by a party may be someone other than that party.

   **b. Delivery of Notice:** A notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written notice by a party; (2) in the case of delivery by a Delivery Service, when the written notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written notice is electronically sent to an e-mail address or facsimile number of a party herein (or subsequently provided by the party following the notice provisions herein) even if it is not opened by the recipient. Notice to a party shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the party set forth herein (or subsequently provided by the party following the notice provisions herein).

   **c. When Broker Is Authorized to Accept Notice for Client:** Except where the Broker is acting in a dual agency capacity, the Broker and any affiliated licensee of the Broker representing a party in a client relationship shall be authorized agents of the party for the limited purpose of receiving notice and such notice to any of them shall for all purposes herein be deemed to be notice to the party. Notice to an authorized agent shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the authorized agent set forth herein (or subsequently provided by the authorized agent following the notice provisions herein) even if it is not opened by the recipient. Except as provided for herein, the Broker's staff at a physical address set forth herein of the Broker or the Broker's affiliated licensees are authorized to receive notices delivered by a Delivery Service. The Broker, the Broker's staff and the affiliated licensees of the Broker shall not be authorized to receive notice on behalf of a party in any transaction in which a brokerage engagement has not been entered into with the party or in which the Broker is acting in a dual agency capacity. In the event the Broker is practicing designated agency, only the designated agent of a client shall be an authorized agent of the client for the purposes of receiving notice.

**2. Default.**

   ~~**a. Remedies of Seller.** In the event this Agreement fails to close due to the default of Buyer, Seller's sole remedy shall be to retain the earnest money as full liquidated damages. Seller expressly waives any right to assert a claim for specific performance. The parties expressly agree that the earnest money is a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain. The parties expressly intend for the earnest money to serve as liquidated damages and not as a penalty.~~

   ~~**b. Remedies of Buyer.** In the event this Agreement fails to close due to the default of Seller, Buyer may seek either to recover the specific performance of this Agreement or to terminate this Agreement upon notice to Seller and Holder in which case all earnest money, deposits and other payments Buyer has paid toward the purchase of the Property shall be returned to Buyer following the procedures set forth elsewhere herein.~~

   ~~**c. Rights of Broker.** In the event this Agreement is terminated or fails to close due to the default of a party hereto, the defaulting party shall pay as liquidated damages to every broker involved in this Agreement the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, all written agreements establishing the amount of commission the broker would have received had the transaction closed are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the Broker(s) actual damages and not a penalty.~~

   ~~**d. Attorney's Fees.** In any litigation or arbitration arising out of the Agreement, including but not limited to breach of contract claims between Buyer and Seller and commission claims brought by a broker, the non-prevailing party shall be liable to the prevailing party for its reasonable attorney's fees and expenses.~~

3. **Risk of Damage to Property.** Seller warrants that at the time of closing the Property and all items remaining with the Property, if any, will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement or Seller's Disclosure of Latent Defects and Fixtures Checklist) as of the Offer Date, except for changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. At time of possession, Seller shall deliver Property clean and free of trash, debris, and personal property of Seller not identified as remaining with the Property. Notwithstanding the above, if the Property is destroyed or substantially destroyed prior to closing, Seller shall promptly give notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement without penalty not later than fourteen (14) days from receipt of the above notice. ~~If Buyer or Seller does not terminate this Agreement, Seller shall cause Property to be restored to substantially the same condition as of the Offer Date. The date of closing shall be extended until the earlier of one year from the original date of closing, or seven (7) days from the date that Property has been restored to substantially the same condition as the Offer Date and a new certificate of occupancy (if required) is issued.~~

4. **Other Provisions.**

   a. **Condemnation:** Seller shall: (1) immediately notify Buyer if the Property becomes subject to a condemnation proceeding; and (2) provide Buyer with the details of the same.  Upon receipt of such notice, Buyer shall have the right, but not the obligation for 7 days thereafter, to terminate this Agreement upon notice to Seller in which event Buyer shall be entitled to a refund of all earnest money and other monies paid by Buyer toward the Property without deduction or penalty.  If Buyer does not terminate the Agreement within this time frame, Buyer agrees to accept the Property less any portion taken by the condemnation and if Buyer closes, Buyer shall be entitled to receive any condemnation award or negotiated payment for all or a portion of the Property transferred or conveyed in lieu of condemnation.

   b. **Consent to Share Non-Public Information:** Buyer and Seller hereby consent to the closing attorney preparing and distributing an American Land Title Association ("ALTA") Estimated Settlement Statement-Combined or other combined settlement statement to Buyer, Seller, Brokers and Brokers' affiliated licensees working on the transaction reflected in this Agreement for their various uses.

   c. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the closing attorney, mortgage lender and/or the title insurance company to meet their respective requirements.

   d. **Electronic Signatures:** For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the buyer's mortgage lender or the other party.

   e. **Entire Agreement, Modification and Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended or waived except upon the written agreement of Buyer and Seller. Any agreement to terminate this Agreement or any other subsequent agreement of the parties relating to the Property must be in writing and signed by the parties. This Agreement may not be assigned by Buyer except with the written approval of Seller (SS611) which may be withheld for any reason or no reason. Any assignee shall fulfill all the terms and conditions of this Agreement.

   f. **Extension of Deadlines:** No time deadline under this Agreement shall be extended by virtue of it falling on a Saturday, Sunday or federal holiday except for the date of closing.

   g. **FIRPTA Affidavit:** Unless Seller is a "foreign person", as that term is defined in Section 1445(f)(3) of the Internal Revenue Code, Seller shall deliver to the closing attorney at Closing a FIRPTA (Foreign Investment in Real Property Tax Act) Affidavit indicating that Seller is not a "foreign person". If Seller is a "foreign person", additional taxes may need to be withheld at Closing.

   h. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form, he or she should consult an attorney. Provisions in the GAR Forms are subject to differing interpretations by our courts other than what the parties may have intended. At times, our courts may strike down or not enforce provisions in our GAR Forms, as written. No representation is made that the GAR Forms will protect the interests of any particular party or will be fit for any specific purpose. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

   i. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is held to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.

   j. **No Authority to Bind:** No Broker or affiliated licensee of Broker, by virtue of this status, shall have any authority to bind any party hereto to any contract, provisions therein, amendments thereto, termination thereof or to notices signed by Broker but not the party. However, if authorized in this Agreement, Broker shall have the right to accept notices on behalf of a party (but not send notices from Broker on behalf of a party unless they are signed by the party). Additionally, any Broker or real estate licensee involved in this transaction may perform the ministerial act of filling in the Binding Agreement Date. ~~In the event of a dispute over the Binding Agreement Date, it shall be resolved by a court or arbitrator having jurisdiction over the dispute, by the written agreement of the Buyer and Seller, or by the Holder but only in making a reasonable interpretation of the Agreement in disbursing earnest money.~~

**k. Notice of Binding Agreement Date:** The Binding Agreement Date shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Notice of the Binding Agreement Date may be delivered by either party (or the Broker working with or representing such party) to the other party. If notice of accurate Binding Agreement Date is delivered, the party receiving notice shall sign the same and immediately return it to the other party. Notwithstanding any other provision to the contrary contained in this Agreement, it is the express intent of this section that (1) a broker or licensee involved in the real estate transaction may perform the ministerial task of filling in the Binding Agreement Date and (2) sending a fully signed purchase and sale agreement with a specific Binding Agreement Date included, that one of the parties has agreed to, constitutes notice of the Binding Agreement Date to the other party.

**l. Objection to Binding Agreement Date:** If the Buyer or Seller objects to the date entered as the Binding Agreement Date, then within one (1) day from receiving notice of Binding Agreement Date, the party objecting shall send notice of the objection to the other party. The objection shall be resolved by the written amendment between the Buyer and Seller by executing a binding agreement date confirmation (F733). The absence of an agreement on the Binding Agreement Date shall not render this Agreement unenforceable. The failure of a party to timely object will result in the parties accepting the Binding Agreement Date as entered.

**m. Rules for Interpreting This Agreement:** In the event of internal conflicts or inconsistencies in this Agreement, the following rules for how those conflicts or inconsistencies shall be resolved will apply:
(1) Handwritten changes shall control over pre-printed or typed provisions;
(2) Exhibits shall control over the main body of the Agreement;
(3) Special Stipulations shall control over both exhibits and the main body of the Agreement;
(4) Notwithstanding the above, any amendatory clause in an FHA or VA exhibit shall control over inconsistent or conflicting provisions contained in a special stipulation, another exhibit or the main body of the Agreement.

**n. Statute of Limitations:** All claims of any nature whatsoever against Broker(s) and/or their affiliated licensees, whether asserted in litigation or arbitration and sounding in breach of contract and/or tort, must be brought within two (2) years from the date any claim or cause of action arises. Such actions shall thereafter be time-barred.

**o. Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; (3) all written representations of Seller in this Agreement regarding the Property or neighborhood in which the Property is located; (4) Buyer's indemnification obligations arising out of the inspection of the Property by Buyer and Buyer's representatives; (5) the section on condemnation; (6) the section on attorney's fees; (7) the obligations of the parties regarding ad valorem real property taxes; and (8) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the Closing.

**p. Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate.

**q. Time of Essence:** Time is of the essence of this Agreement.

**5. Definitions.**
**a. Banking Day**: A "Banking Day" shall mean a day on which a bank is open to the public for carrying out substantially all of its banking functions. For purposes herein, a "Banking Day" shall mean Monday through Friday excluding federal holidays.

**b. Binding Agreement Date**: The "Binding Agreement Date" shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Once that occurs, this Agreement shall be deemed a Binding Agreement.

**c. Broker**: In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and its affiliated licensees unless the context would indicate otherwise.

**d. Business Day**: A "Business Day" shall mean a day on which substantially all businesses are open for business. For all purposes herein, a "Business Day" shall mean Monday through Friday excluding federal holidays.

**e. Day**: For the purposes of this Agreement, the term "Day" shall mean a full calendar day ending at 11:59 p.m., except as may be provided for elsewhere herein. For the purposes of counting days for determining deadlines, the specific date referenced as either the Binding Agreement Date or the date from which the deadline shall be counted will be day zero.

**f. Material Relationship:** A material relationship shall mean any actually known personal, familial, social, or business relationship between the broker or the broker's affiliated licensees and any other party to this transaction which could impair the ability of the broker or affiliated licensees to exercise fair and independent judgment relative to their client.

**g. Use of Initials "N/A":** The use of the initials "N/A" or "N.A." in filling out a blank in this Agreement shall mean "not applicable".

**6. WARNING TO BUYERS AND SELLERS: BEWARE OF CYBER-FRAUD.** Fraudulent e-mails attempting to get the buyer and/or seller to wire money to criminal computer hackers are increasingly common in real estate transactions. Specifically, criminals are impersonating the online identity of the actual mortgage lender, closing attorney, real estate broker or other person or companies involved in the real estate transaction. In that role, the criminals send fake wiring instructions attempting to trick buyers and/or sellers into wiring them money related to the real estate transaction, including, for example, the buyer's earnest money, the cash needed for the buyer to close, and/or the seller's proceeds from the closing. These instructions, if followed, will result in the money being wired to the criminals. In many cases, the fraudulent email is believable because it is sent from what appears to be the email address/domain of the legitimate company or person responsible for sending the buyer or seller wiring instructions. The buyer and/or seller should verify wiring instructions sent by email by independently looking up and calling the telephone number of the company or person purporting to have sent them. Buyers and sellers should never call the telephone number provided with wiring instructions sent by email since they may end up receiving a fake verification from the criminals. Buyer and sellers should be on special alert for: 1) emails directing the buyer and/or seller to wire money to a bank or bank account in a state other than Georgia; and 2) emails from a person or company involved in the real estate transaction that are slightly different (often by one letter, number, or character) from the actual email address of the person or company.

---

Copyright© 2023 by Georgia Association of REALTORS®, Inc.    F201, Purchase and Sale Agreement, Page 7 of 9, 01/01/23

**7. LIMIT ON BROKER'S LIABILITY.** BUYER AND SELLER ACKNOWLEDGE THAT BROKER(S):

    **a.** SHALL, UNDER NO CIRCUMSTANCES, HAVE ANY LIABILITY GREATER THAN THE AMOUNT OF THE REAL ESTATE COMMISSION PAID HEREUNDER TO BROKER (EXCLUDING ANY COMMISSION AMOUNT PAID TO A COOPERATING REAL ESTATE BROKER, IF ANY) OR, IF NO REAL ESTATE COMMISSION IS PAID TO BROKER, THEN THE SUM OF $100; AND

    **b.** NOTWITHSTANDING THE ABOVE, SHALL HAVE NO LIABILITY IN EXCESS OF $100 FOR ANY LOSS OF FUNDS AS THE RESULT OF WIRE OR CYBER FRAUD.

**8. Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement.

- ☐ Back-up Agreement Contingency Exhibit (F604) "_____"
- ☐ Closing Attorney Acting as Holder of Earnest Money Exhibit (F510) "_____"
- ☐ Community Association Disclosure Exhibit (F322) "_____"
- ☒ ~~Condominium Resale Purchase and Sale Exhibit (F204)~~ "_____" *SgH*
- ☒ Conventional Loan Contingency Exhibit (F404) " C " *SgH*
- ☐ FHA Loan Contingency Exhibit (F407) "_____"
- ☐ Lead-Based Paint Exhibit (F316) "_____"
- ☐ Lease Purchase and Sale Exhibit (F207) (to be used with F916) "_____"
- ☐ Lease for Lease/Purchase Agreement (F916) (to be used with F207) "_____"
- ☒ Legal Description Exhibit (F807 or other) "A_____"
- ☐ Loan Assumption Exhibit (F416) "_____"
- ☐ No Financing Contingency Exhibit (F401) "_____"
- ☐ Sale or Lease of Buyer's Property Contingency Exhibit (F601) "_____"
- ☐ Seller's Property Disclosure Statement Exhibit (F301, F302, F304, F307 or F310) "_____"
- ☐ Survey of Property as Exhibit "_____"
- ☐ Temporary Occupancy Agreement for Seller after Closing Exhibit (F219) "_____"
- ☐ USDA-RD Loan Contingency Exhibit (F413) "_____"
- ☐ VA Loan Contingency Exhibit (F410) "_____"
- ☒ Other ~~2220 Berkyshire Special Stipulations as Exhibit "B"~~ *SgH*

**SPECIAL STIPULATIONS:** The following Special Stipulations are made a part of this Agreement.

1. Buyer acknowledges and understands that the offer contemplated by this Agreement is subject to higher and better offers.

2. Seller shall have no duty or obligation to close the sale, as contemplated by this Agreement, until: (a) the entry of an order on the docket in the Chapter 7 bankruptcy case of Larry Darnell Gore, Jr. (Case No. 21-51345-JRS) by the United State Bankruptcy Court, Northern District of Georgia, Atlanta Division (the "Bankruptcy Court") approving the sale of the interest in the bankruptcy estate of Larry Darnell Gore, Jr. (Case No. 21-51345-JRS) (the "Estate") in the Property to Buyer, or substitute party (the"Approval Order"); and (b) the Approval Order becoming a Final Order.

As used in this Agreement or the exhibits hereto, "Final Order" means an order of the Bankruptcy Court (1) which contains language to the effect that under Rule 6004(h) of the Bankruptcy Rules, the order shall be effective and enforceable upon entry, or (2) if the order does not contain such language, an order (i) for which any appeal that has been taken has been finally determined or dismissed, or (ii)for which the time for appeal has expired and no appeal had been filed timely.

3. In the event of any material default of the terms of this Agreement, Buyer and Seller shall have the following as their respective sole remedies:

a. In the event of an uncured material default by Buyer, Seller shall have the right to terminate this Agreement and retain the Earnest Money.

b. In the event of an uncured material default by Seller, Buyer shall have the right to terminate this Agreement and recover the Earnest Money.

4. Buyer and Seller agree that the Property is being sold "As is, Where is" (subject to any Due Diligence Period) and that Seller is not making and has not made any representations or warranties or any present or future covenants regarding the quality of title of the Estate in the the Property. At the closing of the sale contemplated by this Agreement, Seller will convey the Estate's interest in the Property via trustee deed.

5. If this Agreement is not earlier terminated, then in the event that the Bankruptcy Court (1) denies approval of this Agreement, or (2) fails to issue an Approval Order, then, unless otherwise agreed to by Buyer and Seller in writing, this Agreement shall terminate and be of no further force or effect and the parties will be restored to their respective factual and legal positions which existed immediately prior to execution of this Agreement.

6. Buyer acknowledges and understands that Seller is a bankruptcy trustee, has never seen the Property, has never visited the Property, and has no personal knowledge or information about the Property.

7. If there are any lease restrictions on the Property, all deposits/Earnest Money shall be returned to Buyer and all other provisions of this Agreement shall be null and void.

☐ **Additional Special Stipulations (F246) are attached.**

Copyright© 2023 by Georgia Association of REALTORS®, Inc.

**By signing this Agreement, Buyer and Seller acknowledge that they have each read and understood this Agreement and agree to its terms.**

## Buyer Acceptance and Contact Information

**1** Buyer's Signature

_DocuSigned by:_ [signature]

Cesar A Guevara                          5/25/2023 | 2:59 PM EDT
Print or Type Name               Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Buyer's E-mail Address

**2** Buyer's Signature

Print or Type Name               Date

Buyer's Address for Receiving Notice

Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Buyer's E-mail Address

☐ **Additional Signature Page (F267) is attached.**

## Seller Acceptance and Contact Information

*S. Gregory Hays, Trustee*

**1** Seller's Signature

S. Gregory Hays, as and only as Chapter 7 Trustee for bankruptcy estate of Lisa Laday-Davis (Case No. 23-52400-JWC)
Print or Type Name               Date

2964 Peachtree Road, Suite 555, Atlanta, GA 30305
Seller's Address for Receiving Notice

404-926-0060
Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work
mbargar@rlkglaw.com
Seller's E-mail Address

**2** Seller's Signature

Print or Type Name               Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work

Seller's E-mail Address

☐ **Additional Signature Page (F267) is attached.**

## Buyer's Broker/Affiliated Licensee Contact Information

Keller Williams Realty Cityside
Buyer Brokerage Firm

_DocuSigned by:_ *Fatima Lozano*        5/25/2023 | 2:57 PM EDT
Broker/Affiliated Licensee Signature    Date

Fatima Lozano          393375
Print or Type Name      GA Real Estate License #

404-984-0493
Licensee's Phone Number    Fax Number

fatimalozano@kw.com
Licensee's E-mail Address

ARA
REALTOR® Membership

3350 Atlanta Road SE        Smyrna    GA30080
Broker's Address

404-984-0493
Broker's Phone Number    Fax Number

KWSV01          H-46186
MLS Office Code    Brokerage Firm License Number

## Seller's Broker/Affiliated Licensee Contact Information

Chambers Select Realty
Seller Brokerage Firm

*Bill Celler* [signature]        05/29/2023
Broker/Affiliated Licensee Signature    Date

Bill Celler          363987
Print or Type Name      GA Real Estate License #

404-563-4792
Licensee's Phone Number    Fax Number

bill@chambersselect.com
Licensee's Email Address

CAR
REALTOR® Membership

444 Manget St SE #800, Marietta, GA 30060
Broker's Address

404-790-7440
Broker's Phone Number    Fax Number

CHSR01          H-78991
MLS Office Code    Brokerage Firm License Number

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of    5/29/2023 | 1:52 PM EDT
and has been filled in by    Fatima Lozano          .

Copyright© 2023 by Georgia Association of REALTORS®, Inc.          F201, Purchase and Sale Agreement, Page 9 of 9, 01/01/23

# CONVENTIONAL LOAN CONTINGENCY
## EXHIBIT "c____"


*Georgia*REALTORS®

**2023 Printing**

This Exhibit is part of the Agreement with an Offer Date of _5-25-2023_____ for the purchase and sale of that certain
Property known as: _2220 Derbyshire Drive SW_____, _Marietta_____, Georgia_30064_____.

**1. Application.** Buyer shall promptly apply for and in good faith seek to obtain the conventional loan or loans described below ("Loan(s)")
such that Buyer can fulfill Buyer's obligations hereunder prior to the expiration of this Conventional Loan Contingency.
*[Select A. or A. and B. below. Any box not selected shall not be a part of this Agreement. All Loan terms must be filled in.]*

| | | Loan Amount | Term | Interest Rate (at par) | Rate Type | Source Of Loans Term |
|---|---|---|---|---|---|---|
| ☒ A. | **FIRST MORTGAGE LOAN** | _80_ % of purchase price | _30_ years | Not greater than _8.0_ % per annum (or initial rate on adjustable loan) | ☒ Fixed<br>☐ Adjustable<br>☐ Interest Only | ☒ Institutional<br>☐ Seller<br>☐ Other |
| ☐ B. | **SECOND MORTGAGE LOAN** | ____ % of purchase price | ____ years | Not greater than ____% per annum (or initial rate on adjustable loan) | ☐ Fixed<br>☐ Adjustable<br>☐ Interest Only | ☐ Institutional<br>☐ Seller<br>☐ Other |

**2. Use of Particular Mortgage Lender.** Unless an Approved Mortgage Lender is identified below, Buyer may apply for approval of the Loan(s) with any institutional mortgage lender licensed to do business in Georgia. If an Approved Mortgage Lender(s) is identified below, Buyer shall apply for approval of the Loan(s) with at least one such Approved Mortgage Lender. Nothing herein shall require Buyer to obtain mortgage financing from an Approved Mortgage Lender.

**Approved Mortgage Lender(s)**

_Tammy M Burge - Radius Financial Group_____

(hereinafter singularly "Approved Mortgage Lender" and collectively "Approved Mortgage Lender(s)")

**3. Length of the Financing Contingency Period.** The length of the Financing Contingency Period in Section 7 below shall be _14___ days from the Binding Agreement Date.

**4. Length of Time for Buyer to Request a Reduction in the Sales Price Based Upon a Low Appraisal.** The time period for Buyer to request a reduction in the sales price of the Property, if it appraises for less than the purchase price of the Property, as set forth in Section 13 below, shall be _14___ days from the Binding Agreement Date.

**5. Buyer May Apply for Different Loan(s).** A Loan Denial Letter (as that term is defined below) must be for the Loan(s) described above. Buyer may also apply for different conventional loans than the Loan(s) described above. However, the denial of such other loans shall not be a basis for Buyer to terminate this Agreement. Notwithstanding the above, Buyer shall not have a right to apply for a FHA, VA, or USDA loan unless the parties agree to amend this Agreement to add a FHA, VA, or USDA loan contingency exhibit meeting FHA, VA or USDA requirements, as the case may be (in which event this Conventional Loan Contingency shall no longer be part of this Agreement). Nothing herein shall require the Seller to agree to amend this Agreement.

**6. Buyer to Notify Seller of Intent to Proceed.** When it is known, Buyer shall promptly notify seller of any mortgage lender to whom Buyer has sent a notice of intent to proceed with loan application and the name and contact information for the loan originator.

---

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH _Fatima Lozano_____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2023 by Georgia Association of REALTORS®, Inc.          F404, Conventional Loan Contingency Exhibit, Page 1 of 3, 01/01/23

7. **Financing Contingency.** Buyer shall have a financing contingency period equal to the number of days set forth in Section 3 above to determine if Buyer has the ability to obtain the Loan(s) described above ("Financing Contingency Period"). Buyer shall be deemed to have the ability to obtain the Loan(s) unless prior to the end of the Financing Contingency Period, Buyer: a) notifies Seller that Buyer is terminating the Agreement because Buyer has been turned down for the Loan(s) and b) provides Seller within seven (7) days from the date of such notice a letter of loan denial from a mortgage lender based upon the mortgage lender's customary and standard underwriting criteria ("Loan Denial Letter"). The Loan Denial Letter and mortgage lender issuing the Loan Denial Letter must meet all of the requirements set forth elsewhere in this Exhibit but may be provided to Seller after the Financing Contingency Period has ended if the above-referenced seven (7) day period to provide the Loan Denial Letter falls outside of the Financing Contingency Period. Notwithstanding the above, the end of the Financing Contingency Period shall not limit Buyer's rights under the Appraisal Contingency section of this Agreement, provided that the same has not expired.

8. **Use of Approved Mortgage Lender and Loan Denial Letter**. If Buyer has agreed to apply for the Loan(s) with an Approved Mortgage Lender, the Loan Denial Letter must be from an Approved Mortgage Lender.  If Buyer is not required to apply for the Loan(s) with an Approved Mortgage Lender, the Loan Denial Letter may be from any institutional mortgage lender licensed to do business in Georgia. A Loan Denial Letter from a non-institutional mortgage lender shall not be the basis for Buyer to terminate this Agreement.

   Notwithstanding any provision to the contrary contained herein, the Loan Denial Letter may not be based solely upon one or more of the following: (a) Buyer lacking sufficient funds other than the amount of the Loan(s) to close; (b) Buyer not having leased or sold other real property (unless such a contingency is expressly provided for in this Agreement); (c) Buyer not having provided the lender(s) in a timely fashion with all information required by lender, including but not limited to, loan documentation, Official Wood Infestation Reports, structural letters, well tests, septic system certifications, flood plain certifications and any other similar information required by lender (hereinafter collectively "Required Information"); (d) Buyer making purchases that adversely affect Buyer's debt to income ratio; (e) the Property not appraising for at least the purchase price unless this Agreement is subject to an appraisal contingency and an appraisal meeting the requirements of this Agreement has been performed; or (f) the lender not having completed underwriting the loan request.

   Buyer may terminate this Agreement without penalty based upon an inability to obtain the Loan(s) only if Buyer fulfills all of the applicable requirements set forth in this Exhibit.

9. **Right of Seller to Request Evidence of Buyer's Ability to Close.** If the Financing Contingency ends without Buyer terminating this Agreement, Seller shall have the right, but not the obligation, to request that Buyer provide Seller with written evidence of Buyer's financial ability to purchase the Property ("Evidence").  A copy of a loan commitment from each institutional mortgage lender from whom Buyer is seeking mortgage financing to purchase the Property stating the type, amount and terms of the loan(s) and the conditions for funding the loan(s), shall be deemed sufficient Evidence.  The provision of such Evidence is not a guarantee that the mortgage loan(s) will be funded or that Buyer will close on the purchase of the Property. Buyer shall have seven (7) days from the date Seller delivers notice to Buyer requesting such Evidence to produce the same.  No request for such Evidence shall be made by Seller less than seven (7) days from the date of Closing.

10. **Seller's Right to Terminate.** In the event Buyer fails to provide Seller with the Evidence of Buyer's Ability to Close within the timeframe set forth above, Seller shall notify Buyer of the default and give Buyer three (3) days from the date of the delivery of the notice to cure the same. If Buyer does not timely cure the default, Seller may terminate this Agreement within seven (7) days thereafter due to Buyer's default upon notice to Buyer. In the event Seller does not terminate this Agreement within that timeframe, the right to terminate on this basis shall be waived.

11. **Authorization of Buyer to Release Information to Seller and Brokers.** Buyer does hereby authorize Seller and the Brokers identified herein to communicate with the lenders with whom Buyer is working to determine and receive from said lenders any or all of the following information: (a) the status of the loan application; (b) Buyer's financial ability to obtain the Loan(s) or other loans for which Buyer has applied; (c) whether and when Buyer provided the lenders with Required Information; (d) whether and what conditions may remain to complete the loan application process and issue of a loan commitment; and (e) the basis for any Loan Denial Letter.

12. **Miscellaneous.** For the purposes of this Exhibit, the term "mortgage loan" shall refer to a secured lending transaction where the loan or promissory note is secured by a deed to secure debt on the Property. Whether such mortgage loan is a first or second mortgage loan is a reference to the legal priorities of the deeds to secure debt relative to each other and other liens and encumbrances.

13. **Appraisal Contingency.** In addition to Buyer's other rights herein, this Agreement shall be subject to the following appraisal contingency. Buyer shall cause the Lender to: (a) select an appraiser to perform one or more appraisals of the Property and (b) provide Seller with a copy of any appraisal that is for less than the purchase price of the Property. If any such appraisal is for less than the purchase price, Buyer shall, not later than by the end of the time period set forth in Section 4 above, have the right to request that Seller reduce the sales price of the Property to a price not less than the appraised price by submitting an Amendment to Sales Price (F713) ("ATSP") to Seller along with a copy of the appraisal supporting the lower price. In the event that Buyer does not timely submit an ATSP to Seller, Buyer shall be deemed to have waived Buyer's right to do so and this Agreement shall no longer be subject to an appraisal contingency.

   Seller shall, not later than three (3) days from the date of an ATSP is delivered to Seller (but not later than two (2) days prior to Closing), accept or reject the ATSP or seek to negotiate with Buyer a lesser reduction in the sales price of the Property than what is reflected in the ATSP. If, within the above timeframe, an ATSP has not been signed and accepted by the Buyer and Seller and timely delivered to create a legally enforceable amendment, Buyer shall have an additional three (3) days (but not later than one (1) day prior to Closing) to terminate this Agreement without penalty. If Buyer does not terminate the Agreement within this timeframe, Buyer's right to terminate due to the failure to agree to an ATSP shall be waived and Buyer shall close on the Property for the purchase price set forth in this Agreement. Nothing herein shall require Seller to seek a reduction in the sales price of the Property.

---

Copyright© 2023 by Georgia Association of REALTORS®, Inc.        F404, Conventional Loan Contingency Exhibit, Page 2 of 3, 01/01/23

DocuSign Envelope ID: 4F377A8B-8462-4E61-8B74-799D632C9D7E

_S. Gregory Hays, Trustee_

_[signature]_     5/25/2023 | 2:59 PM EDT

**1 Buyer's Signature**         **1 Seller's Signature**

Cesar A Guevara         S. Gregory Hays, Trustee

Print or Type Name         Print or Type Name

**2 Buyer's Signature**         **2 Seller's Signature**

Print or Type Name         Print or Type Name

☐ **Additional Signature Page (F267) is attached.**         ☐ **Additional Signature Page (F267) is attached.**

Keller Williams Realty Cityside         Chambers Select Realty

Buyer Brokerage Firm         Seller Brokerage Firm

_Fatima Lozano_     5/25/2023 | 2:57 PM EDT     _Bill Celle_

**Broker/Affiliated Licensee Signature**         **Broker/Affiliated Licensee Signature**

Fatima Lozano         Bill Celler

Print or Type Name         Print or Type Name

        CAR

REALTOR® Membership         REALTOR® Membership

Copyright© 2023 by Georgia Association of REALTORS®, Inc.         F404, Conventional Loan Contingency Exhibit, Page 3 of 3, 01/01/23

DocuSign Envelope ID: 4F377189-8462-4E61-8B74-7990632C9D7E

EXHIBIT "A"

<u>LEGAL DESCRIPTION</u>

THE FOLLOWING LANDS AND PROPERTY, TOGETHER WITH ALL IMPROVEMENTS
LOCATED THEREON, LYING IN COBB COUNTY, GA TO WIT:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT
472 OF THE 19TH DISTRICT, 2ND SECTION OF COBB COUNTY, GEORGIA,
BEING LOT 111 OF CAMBRIDGE PRESERVE, UNIT I, PHASE 2, AS PER PLAT
THEREOF RECORDED IN PLAT BOOK 274, PAGE 823, COBB COUNTY,
GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A
PART HEREOF BY REFERENCE FOR A MORE DETAILED DESCRIPTION.

THIS BEING THE SAME PROPERTY CONVEYED TO LISA L. LADAY-DAVIS,
DATED 08/14/2020 AND RECORDED ON 08/26/2020 IN BOOK 15787, PAGE
5975, IN THE COBB COUNTY RECORDERS OFFICE.

Loan Number:1058614



**Your actual rate, payment, and costs could be higher.
Get an official Loan Estimate before choosing a loan.**

05/19/2023

To:   **Cesar A Guevara**

Current Address:   **4922 Jocks Ln, Austell, GA 30106**

**radius financial group inc. is pleased to prequalify you for the following loan scenario:**

| | | | |
|---|---|---|---|
| Mortgage Type: | **Conventional** | Property Type: | **Detached** |
| Loan Program: | **Fixed Rate** | Sales Price: | **800,000.00** |
| Occupancy Type: | **Primary Residence** | Loan Amount: | **640,000.00** |
| Loan Purpose: | **Purchase** | Max PITI Payment: | **5,696.09** |

Based upon the information you've provided and the credit information received, you've been prequalified for the above stated terms.

This prequalification is based on the information you've provided regarding your employment history, income and assets as well as a thorough review of your credit history.  This prequalification does not constitute loan approval or commitment to rate, fees or terms. Any misrepresentation in the loan application or adverse change in your financial position may void this prequalification, as would a poor credit history by accepted standards.

This prequalification does not intend or purport to confer any rights or privileges upon any third parties including, but not limited to, sellers of real property, real estate brokers, or their agents.

If you have any questions or concerns, please feel free to contact me directly with my contact information below.  Best wishes with your new home shopping from **radius financial group inc.**

Sincerely,

*Tammy M Burge*

Tammy M Burge
Loan Officer
658817
Mobile:
Email:  tburge@radiusgrp.com

*This does not constitute an offer to extend credit as defined under Regulation "Z".  Should you have any questions, you may call me at 877-223-4800.

600 Longwater Drive suite 107 · Norwell, Ma 02061 · office 781.742.6500 · cell · toll free 877.223.4800 · fax (781) 742.6501

# AMENDMENT TO AGREEMENT
## AMENDMENT # 1

Date: 9-12-2023

 *Georgia*REALTORS

**2023 Printing**

**Whereas**, the undersigned parties have entered into a certain Agreement between Cesar Antonio Guevara Duque
_____ ("Buyer") and S. Gregory Hays, Trustee _____ ("Seller"),

with a Binding Agreement Date of 5/29/2023 _____ for the purchase and sale of real property located at:

2220 Derbyshire Drive SW _____, Marietta _____, Georgia 30064 ; and

**Whereas**, the undersigned parties desire to amend the aforementioned Agreement, it being to the mutual benefit of all parties to do so;

Now therefore, for and in consideration of the sum of Ten Dollars ($10.00) and other valuable considerations paid by each to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to modify and amend the aforementioned Agreement as follows: [Note: The following language is furnished by the parties and is particular to this transaction.]

All parties agree that financing contingency is to be extended 7 days.

All parties agree that any reference to the bankruptcy case of Larry Darnell Gore (Case No. 21-51345-JRS) in the Agreement is a scrivener's error. In this regard, paragraph 2 of the Special Stipulations is replaced with the following:

2. Seller shall have no duty or obligation to close the sale, as contemplated by this Agreement, until: (a) the entry of an order on the docket in the Chapter 7 bankruptcy case of Lisa L. Laday-Davis (Case No. 23-52400-JWC) by the United State Bankruptcy Court, Northern District of Georgia, Atlanta Division (the "**Bankruptcy Court**") approving the sale of the interest in the bankruptcy estate of Lisa L. Laday-Davis (Case No. 23-52400-JWC) (the "**Estate**") in the Property to Buyer, or substitute party (the"**Approval Order**"); and (b) the Approval Order becoming a Final Order.

As used in this Agreement or the exhibits hereto, "**Final Order**" means an order of the Bankruptcy Court (1) which contains language to the effect that under Rule 6004(h) of the Bankruptcy Rules, the order shall be effective and enforceable upon entry, or (2) if the order does not contain such language, an order (i) for which any appeal that has been taken has been finally determined or dismissed, or (ii)for which the time for appeal has expired and no appeal had been filed timely.

☐ **Additional pages (F801) are attached.**

It is agreed by the parties hereto that all of the other terms and conditions of the aforementioned Agreement shall remain in full force and effect other than as modified herein. Upon execution by all parties, this Amendment shall be attached to and form a part of said Agreement.

**By signing this Amendment, Buyer and Seller acknowledge that they have each read and understood this Amendment and agree to its terms.**

DocuSigned by: _____ 6/12/2023 | 6:25 AM PDT
1 Buyer's Signature

1 Seller's Signature

S. Gregory Hays, as and only as Chapter 7 trustee for the bankruptcy estate of Lisa L. Laday-Davis (Case No. 23-52400-JWC)

2 Buyer's Signature

2 Seller's Signature

☐ Additional Signature Page (F267) is attached.

☐ Additional Signature Page (F267) is attached.

Keller Williams Realty Cityside
Buyer Brokerage Firm

Chambers Select
Seller Brokerage Firm

DocuSigned by: Fatima Lozano _____ 6/12/2023 | 9:23 AM EDT Bill Celle
Broker/Affiliated Licensee Signature

Broker/Affiliated Licensee Signature

ARA
REALTOR® Membership

CAR
REALTOR® Membership

**Acceptance Date.** The above Amendment is hereby accepted, _____8_____ o'clock _P_ .m. on the date of _9-12-2023_ , ("Acceptance Date"). This Amendment will become binding upon the parties when notice of the acceptance of the Amendment has been received by offeror. The offeror shall promptly notify offeree when acceptance has been received.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Fatima Lozano IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2023 by Georgia Association of REALTORS®, Inc.                    F701, Amendment to Agreement, 01/01/23

## CERTIFICATE SERVICE

This is to certify that I, Michael J. Bargar, am over the age of 18 and that on this day I have caused to be served a copy of the forgoing *Trustee's Motion for Authority to (A) Sell Property of the Bankruptcy Estate Free and Clear of All Liens, Interests and Encumbrances, and (B) Disburse Certain Proceeds at Closing Claim* by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage affixed thereon to assure delivery by first class United States Mail and/or certified mail, as indicated, to the following persons at the addresses stated:

**First Class Mail**
Office of the United States Trustee
362 Richard B. Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

**First Class Mail**
Chuba B. Abaelu
Quintairos, Prieto, Wood & Boyer PA
365 Northridge Road, Suite 230
Atlanta, GA 30350

**First Class Mail**
Discover Bank
c/o McCalla Raymer Leibert Pierce LLC
Bankruptcy Department
1544 Old Alabama RD
Roswell, GA 30076

**First Class Mail**
Michael J. McCormick
McCalla Raymer Leibert Pierce LLC
Bankruptcy Department
1544 Old Alabama RD
Roswell, GA 30076

**First Class Mail
and Certified Mail**
John Medina, President and CEO
First Federal Bank
4705 W US Highway 90
Lake City, FL 32055

**First Class Mail**
Carla Jackson
Cobb County Tax Commissioner
PO BOX 100127
Marietta, GA 30061-7027

**First Class Mail**
Fatima Lozano
Keller Williams Realty Cityside
350 Atlanta Road, SE
Smyrna, GA 30080

**First Class Mail**
Michael Campbell
Attention: Denise Hammock
Campbell & Brannon, LLC
5565 Glenridge Connector, Suite 350
Atlanta, GA 30342

**First Class Mail**
Bill Celler
Chambers Select Realty
444 Manget St SE, #800
Marietta, GA 30060

**First Class Mail**
Daniel E. Raskin
325 Hammond Dr, Suite 114
Atlanta, GA 30328

**First Class Mail**
Lisa L. Laday-Davis
798 Springs Crest Drive
Dallas, GA 30157

**First Class Mail**
High-Caliber Construction LLC
c/o Justin Dickerson
48 Violet Lane
Dallas, GA 30132

**First Class Mail**
Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

**First Class Mail**
Lisa D. Smith
Bankruptcy Specialist
Internal Revenue Service
401 W. Peachtree ST, NW
M/S 334-D
Atlanta, GA 30308-3539

**First Class Mail**
Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

**First Class Mail**
Internal Revenue Service
401 W. Peachtree Street, N.W.
Stop 334-D
Atlanta, GA 30308

**First Class Mail**
Department of Justice, Tax Division.
Civil Trial Section, Southern Region
P. O. Box 14198
Ben Franklin Station
Washington, D. C. 20044

**First Class Mail**
United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**First Class Mail**
Georgia Department of Revenue
Compliance Division
ARCS - Bankruptcy
1800 Century Blvd NE, Suite 9100
Atlanta, GA 30345-3202

This 22nd day of June, 2023.

*/s/ Michael J. Bargar*
Michael J. Bargar
Georgia Bar No. 645709